We conclude, therefore, that there is no proof that the assignment was without consideration; that Sommers had the right to transfer his interest in the Brinckerhoff estate to Mrs. Berrian to pay her claim; that the evidence does not establish an intention or conspiracy to cheat and defraud the plaintiff; and that the judgment should be reversed.

---

## In re WITHERS' ESTATE.

(Supreme Court, Appellate Division, First Department. December 10, 1897.)

EXECUTORS—FINAL ACCOUNTING—DISCRETION OF SURROGATE.

An executor, after filing a partial account and making partial distribution, was cited to show cause why he should not render a final account. On the return, it appeared that among the assets were securities which could not be sold, and that active litigation, to which the executor was a party, was pending in relation to those securities, and that the executor held certain unsalable real property bought in under foreclosure of a mortgage, and no other assets. *Held*, that the surrogate had discretion, under Code Civ. Proc. § 2807, to refuse to require a final accounting and distribution at that time.

Appeal from order of surrogate.

In the matter of the estate of David Dunham Withers, deceased, a petition was filed requiring the executor to file his final account. From an order denying the accounting, petitioner appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

L. Laflin Kellogg, for appellant.

Joseph Larocque, Jr., for respondent.

INGRAHAM, J. The will of the testator was admitted to probate by the surrogate of New York on the 16th day of March, 1892, and on that day letters testamentary were granted to the respondent. In June, 1894, the respondent filed an account of his proceedings, which account was judicially settled by the surrogate of the city and county of New York on the 5th day of December, 1894. That account was interlocutory, not a final account. Under the decree entered on that accounting the executor has distributed, among parties interested in the estate, $650,000 of the principal of the estate, and over $99,000 of the income. Upon the application of the appellant, on June 3, 1897, a citation was issued requiring the executor to show cause why he should not render an additional and final account of his proceedings as executor and trustee. Upon the return of that citation the executor appeared, and in his answer stated that the estate had been distributed, except certain property which had been acquired by the executor upon the foreclosure of certain mortgages or liens held by the testator at the time of his death, one upon a railroad in the state of Illinois, and the other upon a piece of property known as the "Monmouth Park Association," in the state of New Jersey. From the statement made by the executor it appeared that it had been impossible to dispose of the securities representing the railroad in the state of Illinois because of the fact that the rail-

road is in the course of construction, and that it had not been demonstrated that the securities would be of any particular value. In relation to this railroad it also appeared that there was an action in the supreme court of this state, commenced by the testator and his associates, against the bondholders for whom they had acted, to have their accounts as such "committee adjusted and settled, their lien upon the securities which they held in their hands judicially established, and said securities sold and disposed of for the purpose of repaying the advances which they had made as members of said committee"; that the testator died pending the said litigation, and the suit was continued by the surviving plaintiff, and, after a protracted trial, a decree was finally rendered settling the account of the plaintiffs in that action, and directing a sale of the securities held by them for their reimbursement; that there was a subsequent sale under that decree, at which the executor and his co-plaintiff in that action were obliged to buy the securities at such sale on behalf of the estate, but that an appeal has been taken from a judgment of the general term affirming a judgment of the special term in that action to the court of appeals, such appeal having been taken December 28, 1896, and that the said case is still upon the calendar of the court of appeals, undetermined; that there is also a litigation in regard to such railroad pending in Illinois, in which a claim is made against the property of the estate; and that until the final settlement of these litigations it is impossible for the executor to make a final account and distribution of the interests of the estate in said railroad property. In relation to the Monmouth Park property, it appeared that the testator, at the time of his death, was the owner of a large amount of mortgage bonds of the association, which was the owner of a race course in the state of New Jersey; that the interest upon these bonds was not paid, and that the mortgage was foreclosed by the trustees, and the property sold under a judicial decree; that, under the agreement with the bondholders, for their protection, Mr. Cassatt and the deponent, as representing the estate of the said testator, to protect their interests, were obliged to purchase the property at the foreclosure, and the same was to be purchased in trust for the bondholders, in view of its sale at private sale; and that it has been impossible to effect a sale of such property, as all efforts to effect a sale had been unsuccessful. The property thus acquired was again offered for sale at public auction on the 22d day of April, 1897, at an upset price of $50,000. No bid therefor was obtained, and since that time the executor has been making diligent efforts to find a purchaser, but without success. It also appears that the bonds of this association held by the estate were used, so far as necessary, in making payments for the property purchased in the interest of the bondholders, and that it is impossible to distribute the interest of the estate in this property among those interested in the estate until it has been sold.

The answer of the executor clearly shows that it would be most disadvantageous to the estate to force a sale of these properties at the present time; and it is difficult to see, from the statement presented to the surrogate, how the interest of the estate in either

this railroad company or in the Monmouth Park Association could be divided among those interested. If, therefore, the surrogate had any discretion to refuse to order at this time a final accounting and distribution of the estate, we think his discretion was properly exercised. The proceeding is under section 2807 of the Code, and it seems to us that this provision clearly contemplates that the surrogate is to exercise a discretion as to when a final accounting should be ordered. The section provides that, "in either of the following cases, the surrogate's court may, from time to time, compel a judicial settlement of the account of a testamentary trustee." There is no express provision here as to when that final accounting is to be ordered, nor as to the frequency with which intermediate accounts shall be required. The papers in this case show clearly that the time has not arrived for a final accounting and distribution of the estate. It is not claimed that the executor has in his hands any property undistributed, except that connected with the railroad and the park association, before mentioned; and where the surrogate has exercised his discretion in declining to order an intermediate accounting, where the final accounting and distribution cannot be made, we would not be justified in reviewing that discretion, unless it was apparent that the discretion had been abused, or that some such accounting was necessary for the protection of the petitioners. In fact, the application is not made for an intermediate accounting, the object of the petitioners seeming to be to obtain possession of their share of this estate undistributed; but the court is bound to consider, not only the interests of these petitioners, but the interests of all concerned in the estate; and, from the statement made, it is quite apparent that the interests of the estate would be sacrificed by an immediate distribution of this property.

We think, therefore, that the action of the surrogate was right, and his decree is affirmed, with costs. All concur.